UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 24-CR-10044-MJJ |
| | ) | |
| BALWINDER SIGNH | ) | |

**<u>DEFENDANT'S SENTENCING MEMORANDUM</u>**

Balwinder Singh stands before the Court prepared for sentencing for his role in the conspiracy to commit visa fraud. He is a man whose spirit of generosity and warmth touches all those who meet him. Since his arrest in this case, he has lived and worked in New York City with his wife, Lalita and her son, who he treats as his own. They are a loving family in the tight knit Indian & Guyanese community in Queens.

We ask the Court to impose a sentence of time served, with two years of supervised release to follow, with the first 6 months served under home confinement. This recommendation is made in light of the changes to his life made over the two years of the pendency of this case, the circumstances of his flight from India, and his specific role in this conspiracy.

This sentence is consistent with the factors set forth in 18 U.S.C. § 3553(a) and will result in a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing. *United States v. Kimbrough*, 128 S.Ct. 558 (2007); *United States v. Booker*, 125 S.Ct. 738 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008).

I.    **History and Characteristics of the Defendant & Nature of the Offense –**

**Application of § 3553(a)(1)**

a. *History and Characteristics of the Defendant*

Mr. Singh's life today is in stark comparison to his experiences as a child and young adult. Today he works regularly, lives with his wife Lalita, and the largest conflict he endures is his wife's insistence that he take better care of himself. PSR ¶¶ 58-59. In contrast, Mr. Singh was born into a region of India that has been fraught with conflict for generations. Mr. Singh is Sikh; he and his family are affiliated with the Sikh separatist movement in the Punjab region of India. His family's political affiliations have long fought against the powerful majority political regime in India, an acknowledgement of atrocities against Sikh people in 1984 and for an independent Khalistan. This complicated political climate caused Mr. Singh to flee India as a young man out of fear for his life and in a hope for a better future, first in England and later in the United States. His journey here has been harrowing and more complicated for a person crossing through Mexico who does not speak Spanish. The political strife in his home in India has caused permanent separation from his family members. Mr. Singh adamantly believes that if he is returned to India he will be killed. He has not had contact with his parents or brother in nearly 20 years and fears that they may have been killed. These fears are not unfounded. He has been taken and beaten, as has his father. PSR ¶¶ 47-50. The movement for a free Khalistan has been buoyed by people, like Mr. Singh, living in the Indian diaspora who can support the movement from afar. However, this makes Mr. Singh's potential removal to India that much more dangerous. "In 2024, the US Department of Justice alleged that an Indian government employee had attempted to assassinate SFJ's [Sikh's for Justice] main spokesperson, Gurpatwant Singh Pannun, in Manhattan, one year after the slaying of pro-Khalistan organizer and Canadian citizen Hardeep

Singh Nijjar, whose killers Justin Trudeau accused of having connections to Indian intelligence."[1]

We attach, under seal, Mr. Singh's asylum application. The initial application was denied, but an appeal remains pending and Mr. Singh is represented by immigration counsel. PSR ¶ 52.

### b. Nature of the Offense

Mr. Singh's involvement in this unique conspiracy was that of the get-away driver. He conspired with others to stage robberies so that the "victims" could receive a benefit that he himself is seeking – a path towards a lawful immigration status. Mr. Singh did not coordinate the details of the fake robberies, he did not handle the financial transactions, and he was not responsible for which people, or how many people, would be involved. The totality of this conspiracy was broad, but Mr. Singh was only ever present for 6 robberies. PSR ¶ 11. The individuals who were orchestrating the details of these robberies also took steps to make sure that no one was harmed; by making sure no customers were present and using fake firearms.

While his role was of lesser importance than other co-conspirators, he is still mindful that his actions caused harm, particularly to those in the process of obtaining lawful visas for having been victim of serious crimes, and for law enforcement personnel who had to respond to these staged events. What has become clear during the years since his initial arrest is that Mr. Singh's motivation in participating in these crimes was economical, and more specifically, to be able to acquire enough money to support his heroin use.

---

[1] https://www.thenation.com/article/world/khalistan-movement-referendum/

*c. Employment*

Mr. Singh is a skilled craftsman who can build a house, almost from the ground up. His immigration status, or lack thereof, has impeded his ability to obtain a standard full-time job, so he routinely works on a day-to-day basis and is paid in cash. If he had lawful status here, he could easily own a contracting business and earn a considerable income. As it stands, Mr. Singh is still able to demonstrate his craftsmanship in his community, as shown in the glowing letters of support, and the pictures of his handiwork from recent jobs.



## II.    <u>Guideline Range</u>

The parties in their plea agreement negotiated a total offense level of 9 and there is no dispute that Mr. Singh falls into Criminal History Category II, with a resulting guideline range of 6-12 months. The parties and the Probation Department differ on the application of certain enhancements, yielding the following possibilities for the Court's offense level computation:

| | | | | | Adjusted Offense Level | Guideline Range |
|---|---|---|---|---|---|---|
| **Probation Calculation** | Base Offense Level: 11 | § 2L2.1(b)(2)(A): +3 | § 3B1.2(b): -2 | §3E1.1(A): -2 | 10 | 8-14 months |
| **Plea Agreement** | Base Offense Level: 11 | n/a | n/a | §3E1.1(A): -2 | 9 | 6-12 months |
| **Alternative #1** | Base Offense Level: 11 | § 2L2.1(b)(2)(A): +3 | n/a | §3E1.1(A): -2 | 12 | 12-18 months |
| **Alternative #2** | Base Offense Level: 11 | n/a | § 3B1.2(b): -2 | §3E1.1(A): -2 | 7 | 2-8 months |

If the Court were to adopt the parties' calculations and find a guideline range of 6-12 months, Mr. Singh's range would fall within Zone B, which permits the Court to consider sentences of probation with a condition of community confinement or home detention, a split

sentence, and a sentence of imprisonment. §5C1.1. Under this section, the requested sentence we propose, of time served, with 2 years of supervised release, with the first 6 months served under home confinement, is not a variance as the Court can impose a sentence that is served as home detention or community confinement. It is worth noting that home confinement is a form of punishment. "Home confinement programs using electronic monitoring have a broad range of goals such as incapacitation, punishment, and deterrence."[2] We would propose that he be subjected to electronic monitoring and that his liberty be restricted such that he only be permitted to leave the home for scheduled hours of employment, necessary care for his children and nephew, emergency medical issues, but that he otherwise must remain in his residence. In comparison to the requirements of the pre-trial supervision, this represents a significant increase in supervision and restriction on Mr. Singh's freedom.

### III.    Other Purposes of Sentencing

In its considerations, the Court is directed to consider deterrence when imposing punishment. 18 U.S.C. § 3553(a)(2)(B). For Mr. Singh, considerations of specific deterrence are not paramount because he has shown over the course of nearly two years of pre-trial release that he has left criminal activity in the past. Though the Government may argue that general deterrence warrants the imposition of a guideline sentence, the Court should consider that the National Institute of Justice, a branch of the Department of Justice, has found that "increasing the severity of punishment does little to deter crime."[3] This finding is based on research that shows

---

2 Saffran, Jodi, *Electronically Monitored Home Confinement - Not a Panacea for Corrections, But a Useful Tool*, https://www.bop.gov/resources/research_projects/published_reports/gen_program_eval/oreprelectronicmon.pdf

3  Five Things About Deterrence, NAT'L INST. OF JUST. (May 2016), https://nij.ojp.gov/topics/articles/five-things-about-deterrence.

that more severe punishments do not "chasten" offenders, that prison may exacerbate recidivism, and that certainty of punishment has a greater impact than severity. *Id.*

The achievements of Mr. Singh that we have described show that the other purposes of incarceration – considerations of training, education and treatment during a prison sentence under 18 U.S.C. § 3553(a)(2)(D) are largely irrelevant, in part because of his precarious immigration status, but also because he has a career, a stable family and has made strides to control his drug use.

**<u>Conclusion</u>**

For these reasons, we ask the Court to impose a sentence of time served, with 2 years of supervised release, with the first 6 months to be spent on home confinement.

BALWINDER SINGH
By his attorney

*<u>/s/ Jessica P. Thrall</u>*
Jessica P. Thrall
#670412
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061

<u>CERTIFICATE OF SERVICE</u>

I, Jessica P. Thrall, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 16, 2025.

*<u>/s/ Jessica P. Thrall</u>*
Jessica P. Thrall